## Case No. 7,020.

### The INDIANA.

[Abb. Adm. 330.] [1]

District Court, S. D. New York. Nov., 1848.

[1] [Reported by Abbott Brothers.]

E. C. Benedict, for libellants.
C. Van Santvoordt, for claimant.

BETTS, District Judge. The libellants having established a right, primâ facie, to compensation for the injuries received in the collision articled upon, the case rests upon the sufficiency of the defence made on behalf of the claimant. That defence specifies three acts of the libellants which, it is contended, were wrongful under the circumstances, and operated to cause the collision, without fault or negligence on the part of the claimant.

Those facts are the following: (1) That the schooner was anchored, in a thick, dark night, nearly in the middle of the river, in the ordinary route and channel of steam vessels passing up and down the river. (2) That no light, proper and sufficient to warn approaching vessels of the position of the schooner, was exhibited upon her at the time of the collision. (3) That no watch was kept on her deck at the time.

It is contended, that owing to these acts of culpable negligence, those in charge of the steamboat were prevented from discerning the schooner until so near her as to render it impossible to avoid the collision. So far as respects the character of the weather and the position of the schooner, the evidence upon both sides is in substantial harmony. For although some of the testimony introduced on behalf of the libellant charges that the night was so dark that no vessel could be safely navigated, yet the weight of evidence on that side, in concurrence with all the testimony offered for the claimant, is to the effect that it was proper and safe, on the night in question, for steam vessels to run, inasmuch as the land on each side of the river could be seen. And although there was a slight disagreement amongst the witnesses as to the position of the schooner—the claimant's witnesses stating that she lay "in the middle of the river," and the witnesses for the libellant saying that she was "a third or more of the width of the river from the east shore,"—yet the discrepancy is too slight to embarrass the court in applying to the case the rules of law governing cases of a similar kind. For the assertion of the pilot of the Indiana, that the position taken up by the schooner was an unusual one for vessels to

anchor in, is not contradicted by any evidence upon the other side.

These facts, then, are established by the pleadings and proofs. That the wind was northeast, and the tide a strong ebb. That the schooner lay at anchor wide off in the river. That the night was so thick and dark, that an object of the size and color of the schooner could not, without the aid of a light on board of her, be discovered by those on board of a steamboat running on the same track, at a distance of more than ten or fifteen rods off. That the position thus taken up by the schooner was one far out in the river, there a mile or more in width, and at a place where steamboats were not bound to exercise extraordinary circumspection or precaution in expectation of coming upon vessels at anchor.

In respect to that charge of negligence on the part of libellants, which is based on the position selected by the schooner for anchoring, the rule applicable to such cases requires the promovent to show that there was positive fault or negligence on the part of the colliding vessel, and that there was no blamable conduct in the one injured, conducing to the collision. The utmost that is made out by the claimant is, that the choice of the place where the schooner anchored might possibly have led to the accident. There is no evidence that any fixed understanding exists amongst navigators on the Hudson river, to the effect that vessels will not anchor out towards the middle of the river, even at points where it is of such great breadth; nor any proof that it is the invariable or even the most usual course for steamboats to hold a course directly midway the river during the night time. I do not think, therefore, that this case can be ranged with those where vessels are guilty of culpable negligence in anchoring in the common passages of great thoroughfares. After leaving the immediate harbor of New York, and particularly in those parts of the North river where there is a navigable channel of a mile or more in width, there does not seem to be any rule, or any necessity, compelling vessels to confine their anchorage within any particular limit, or excusing those under way in one part of the channel from exercising the ordinary precaution and vigilance which might be required from them in another part.

The charge of negligence, in not keeping a light conspicuously suspended on the schooner, is better founded. Both the statute law of the state and the equally stringent rule of the maritime law, require a vessel at anchor, under such circumstances as are shown in this case, to maintain a good and sufficient light throughout the night, so placed as to be visible to other vessels approaching her from any direction. Compare, also, The Santa Claus [Case No. 12,-327]. 1 Rev. St. 685, § 2: Thain v. The North America [Case No. 13,853]; Simpson v. Hand, 6 Wheat. 324; Bullock v. The Lamar [Case No. 2,129]; Waring v. Clarke, 5 How. [46 U. S.] 441. And the testimony on the part of the claimants is full and satisfactory to show that no light on the schooner was discernible from the steamboat, either before or at the time of the collision.

This evidence is given not by the pilot and other persons on board the steamboat alone, but by others on the canal boats in tow alongside her. The witnesses all assert that they were on a vigilant look-out,—the alarm-bell of the steamer having been rung, —and that they saw a few rods ahead a dark object on the water, but no appearance of a light upon any part of it.

It is proved, by those on board of the schooner, that a globe lamp was trimmed and lighted, and properly set, at about eleven o'clock that night, and that at the time of the collision it remained in the same place, still lighted, and was taken down and used in searching for the damages she might have received. The pilot, however, adds that the wick was found crusted thickly, and he picked the wick before hanging it up again.

After the two vessels were separated, the steamer passed down the river, but returned a short time subsequently to put back upon the schooner one of her crew, who had got on board the steamer during the collision. On that occasion the light of the lamp was plainly seen by those on board the steamer, in season to give them notice of her proximity in ample time to avoid a collision. This circumstance is urged, on the part of the libellants, to show that the lamp had all the time given sufficient light to warn the steamer where the schooner lay; while it is, on the other hand, invoked by the claimant, as evidence that the re-trimming of the lamp was necessary to render it of any service to other vessels approaching her.

I think this particular is not sufficient to countervail the strong proofs furnished by the claimant of the absence of any light exhibited on the schooner at the time of the collision, competent to afford warning to the steamer of her position. The light probably continued feebly kindled and burning too obscurely to give more light than enough to show the men, as they came on deck, that the wick was still ignited; and even that effect might well be produced from the jar of the two vessels in the collision, shaking up or resuscitating slightly the flame.

The weight of evidence, in my opinion, is against the libellants upon this point, and fastens the fault on them of having failed to keep up, burning during the night, a clear light, placed conspicuously on the vessel.

The omission of the libellants to maintain a competent watch on deck throughout the night is clearly proved. That was an act of gross negligence on their part. Compare, also, The Rebecca [Case No. 11,618].

All hands on board the schooner turned in at about eleven o'clock in the evening. A look-out, doing his duty on deck, could have secured the schooner from the accident. He could have given the steamer timely warning, by hailing or by waving a light, and especially would have acquitted the schooner of fault in respect to a standing light on the vessel, by seeing that the lamp was kept in proper condition, and furnished the light required by law. Aside from the positive duty to maintain such a light, enjoined by the local statute, these acts of omission are made by the maritime law evidence of culpable inattention and want of precaution, which bar the schooner of all claim to damages she may have suffered in consequence of the neglect. The libel must therefore be dismissed, with costs to be taxed.